[Crim. No. 8478. First Dist., Div. One. Feb. 5, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
VIDA VATELLI, Defendant and Appellant.

## COUNSEL

John A. Reding, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Louis C. Castro, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—Defendant appeals from a judgment entered upon his conviction of violating Penal Code section 4502[1] (possession of a knife by a prisoner). The conviction arose out of facts which disclose that on December 30, 1968 defendant, a San Quentin prison inmate, underwent a routine search which revealed the presence of a prison-made knife in the seam of defendant's blue denim coat. Defendant alleges several assignments of error which we do not find meritorius. We proceed to discuss these assertions of error and any particular facts pertinent thereto.

### Double Punishment

As a result of the possession of the knife defendant was disciplined by being placed in isolation for 29 days, by being placed in maximum custody and assigned to segregation, and by being deprived of privileges for 90 days. When charged with the instant offense he moved to dismiss the prosecution on the ground that, having been administratively disciplined by the prison authorities, he would be subjected to double punishment in violation of section 654 which, in pertinent part, provides as follows: "An act or omission which is made punishable in different ways by different provisions of this Code may be punished under either of such provisions, but in no case can be punished under more than one; . . ."

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

Section 654 prohibits only dual punishment by judicial action. (*In re Gullatt,* 69 Cal.2d 395, 398 [71 Cal.Rptr. 676, 445 P.2d 292]; *People* v. *Ford,* 175 Cal.App.2d 37, 39 [345 P.2d 354]; *People* v. *Eggleston,* 255 Cal.App.2d 337, 338 [63 Cal.Rptr. 104].) The prohibition in section 654 does not make a criminal sentence or administrative action a bar to the other. (*In re Gullatt, supra.*) Accordingly, it has been held that prison disciplinary measures do not bar subsequent prosecution in a criminal action for violation of a penal statute prohibiting the same act which was the basis of the prison discipline by virtue of the proscription against double punishment provided in section 654 (*People* v. *Eggleston, supra; People* v. *Ford, supra*) or by the proscription against double jeopardy provided in the California Constitution (art. I, § 13) and section 1023. (*People* v. *Eggleston, supra; People* v. *Elliott,* 221 Cal.App.2d 575, 577-578 [34 Cal.Rptr. 560]; *People* v. *Mason,* 200 Cal.App.2d 282, 284 [19 Cal.Rptr. 240]; *People* v. *Garmon,* 177 Cal.App.2d 301, 303-304 [2 Cal. Rptr. 60].)

### Inmate Witnesses

■ Defendant argues that it was error for the trial court to deny his motion to call prison inmates to show that section 4502 was not uniformly applied. Under section 2621 a prisoner may be permitted to appear in a court of this state in the discretion of the judge to whom the application is made where the prisoner is a material witness. (See *People* v. *Davenport,* 210 Cal.App.2d 335, 339 [26 Cal.Rptr. 753].) Accordingly, there must be a showing that such discretion was abused before the denial of such an application is grounds for reversal.

■ Pursuant to Government Code section 26501, the prosecution of a public offense is entrusted to the district attorney. This statute vests in the district attorney the discretionary power to institute criminal proceedings. (*Taliaferro* v. *Locke,* 182 Cal.App.2d 752, 757 [6 Cal.Rptr. 813]; *Ascherman* v. *Bales,* 273 Cal.App.2d 707, 708 [78 Cal.Rptr. 445].) It is well settled, moreover, that unless a statute clearly makes prosecution mandatory, a district attorney is vested with discretionary power in the investigation and prosecution of charges, and a court cannot control this statutory power by mandamus. (*Board of Supervisors* v. *Simpson,* 36 Cal.2d 671, 675-676 [227 P.2d 14]; *Taliaferro* v. *Locke, supra,* at pp. 755-757; *Ascherman* v. *Bales, supra.*)

■ Section 4502 does not provide for the mandatory prosecution of

the crime therein prescribed.[2] Accordingly, since the district attorney was vested with the discretionary power to prosecute for a violation of section 4502, it would not have availed defendant to present a witness who would testify that in other cases the district attorney did not prosecute since the testimony by the inmates would not have provided a defense to the charge. (*People* v. *Stabler,* 202 Cal.App.2d 862, 865 [21 Cal.Rptr. 120].)

Defendant asserts that the testimony of the proffered witnesses was material for the purpose of establishing that defendant was deprived of the equal protection of the laws because others who committed the same offense and who are known to the authorities were not prosecuted. This contention is answered by the decisions which hold that it is not a denial of equal protection that one guilty person is prosecuted while others equally guilty are not. (*People* v. *Hess,* 104 Cal.App.2d 642, 685 [234 P.2d 65] [app. dismd. 342 U.S. 880 [96 L.Ed. 661, 72 S.Ct. 177]]; *People* v. *Darcy,* 59 Cal.App.2d 342, 353 [139 P.2d 118]; *People* v. *Oreck,* 74 Cal.App.2d 215, 222 [168 P.2d 186]; *People* v. *Montgomery,* 47 Cal.App.2d 1, 11 [117 P.2d 437]; *City of Banning* v. *Desert Outdoor Advertising, Inc.,* 209 Cal.App.2d 152, 155 [25 Cal.Rptr. 621]; *People* v. *Flanders,* 140 Cal. App.2d 765, 767, 769 [296 P.2d 13]; *People* v. *Pope,* 168 Cal.App.2d 666, 669 [366 P.2d 236].) In *Pope* the reviewing court rejected the same contention which defendant makes here, i.e., that in some cases prison inmates were punished administratively for the possession of weapons while in isolated cases criminal charges were filed against them for violating section 4502.

Defendant's reliance on *Yick Wo* v. *Hopkins,* 118 U.S. 356 [30 L.Ed. 220, 6 S.Ct. 1064] is misplaced. That case "does not stand for the proposition that persons violating the law are to have equal protection from prosecution, but rather for the proposition that equal protection of the law will be extended to all persons in the pursuit of their lawful occupations regardless of their race." (*People* v. *Flanders, supra,* 140 Cal.App.2d 765, 769; *People* v. *Darcy, supra,* 59 Cal.App.2d 342, 352-353; *People* v. *Montgomery, supra,* 47 Cal.App.2d 1, 11.) As observed in *Darcy,* the basis of the claim in *Yick Wo* is that the petitioner had been refused a license because of his nationality and not that he had been arrested because he was Chinese. (At p. 352.) If the rationale of *Yick Wo* were applied to persons arrested for crimes the effect would be that if some guilty persons escape prosecution, others who are apprehended should not be prosecuted. (*People* v. *Flanders, supra; People* v. *Darcy, supra,* at p. 353.)

---

[2]Section 4502 provides that a prisoner who possesses any of the instruments or weapons therein described is guilty of a felony and shall be punished by imprisonment in a state prison for the term prescribed.

## Expert Witness

 Upon the finding of the knife on defendant's person Correctional Lieutenant Richard A. Nelson read an admonition to defendant from a form designated "Specific Warning Regarding Interrogation." This admonition, in essence, stated the *Miranda* warning[3] and inquired whether defendant understood these rights and whether, having these rights in mind, he wished to talk. Defendant responded orally that he understood his rights and stated that he was willing to discuss the situation. Defendant then signed two of these forms, following which he submitted to an interrogation, responding to some questions and declining to answer others.

At the trial testimony was adduced by the prosecution with respect to the execution by defendant of these forms and defendant's statements elicited by the interrogation. Defendant, upon taking the stand, did not deny that the signatures on the two forms were his, but stated that they did not look like his signatures and that he did not remember signing the two forms.[4]

Defendant's counsel thereafter moved the court to appoint two handwriting experts to determine the authenticity of the signatures appearing on the two forms. At the time said motion was made defense counsel represented to the court that he had submitted one of the documents purporting to contain defendant's signature and exemplars of defendant's signature to a handwriting expert in the sheriff's office for examination, and that said expert was of the opinion that the signature was that of defendant although it appeared to have been made under emotional stress. In making the motion counsel for defendant made no showing as to the necessity for the appointment of the two experts except that defendant felt that the authenticity of his signatures was material in that "it bears directly upon an incident arising out of the factual circumstances." The trial court denied the motion upon the basis that while the authenticity of the signatures might have some bearing on the issue of the credibility of the officers, it was immaterial since, in view of the oral *Miranda* admonition, it made no difference whether the forms were signed or not. The trial court also based its ruling on the ground that the motion was not timely made, in that it was made on the last day of the trial. The court also indicated that it would

---

[3]This warning stated: "No. 1, you have the right to remain silent. No. 2, anything you say can and will be used against you in a court of law. No. 3, you have the right to a lawyer and to have him present with you while you are being questioned. No. 4, if you cannot afford to hire a lawyer, one will be appointed to represent you before questioning, if you wish one. . . ."

[4]Defendant stated: "I wouldn't deny signing them" and also stated ". . . when I say that I do not deny writing these, yet I do not admit remembering signing these documents, doesn't say I didn't do it. It says that I don't remember having done so."

permit defendant to call the expert witness whom defendant had consulted.

Although the trial court was correct in stating that it is not necessary to obtain an accused's signature to a *Miranda* admonition, we perceive that the authenticity of defendant's signature on the subject forms was material to the issue whether the *Miranda* warning was in fact given to defendant. If evidence was adduced indicating that the signatures which the officers testified were those of defendant were not in fact his, their credibility would be subject to impeachment on this issue, as well as to the issue whether the oral *Miranda* admonition was in fact given. However, under all the surrounding circumstances no abuse of discretion appears. ▮ Although Evidence Code section 730 provides for court-appointed experts, that statute does not grant a defendant in a criminal case an absolute right to the appointment of an expert on his behalf but is a matter discretionary with the court. *(People v. Berry,* 199 Cal.App.2d 97, 105 [18 Cal.Rptr. 388]; *People v. Rickson,* 112 Cal.App.2d 475, 479 [246 P.2d 700]; *People v. Porter,* 99 Cal.App.2d 506, 510 [222 P.2d 151].)

▮ In the present case the situation confronting the trial court was not one where defendant was asking in the first instance for an appointment of an expert to make a determination whether the handwriting on the subject forms was that of defendant. Rather, it was a request to appoint experts after the expert selected by defendant indicated that his testimony regarding the authenticity of the signatures would be adverse to defendant. This circumstance, coupled with the untimeliness of the motion, sufficed to warrant the exercise by the court of its discretion to deny the motion particularly in view of the equivocation on the part of defendant as to whether the signatures were his.

*Effective Assistance of Counsel*

▮ Defendant argues that he was denied effective assistance of counsel in that the public defender provided at sentencing was totally unfamiliar with many of the facts of the case because he was not the trial counsel and because the public defender permitted inflammatory statements to be made by the deputy district attorney at the sentencing proceeding. ▮ In considering this contention we observe that sentencing is one of the critical stages at which the accused has the right to counsel. *(Mempa v. Rhay,* 389 U.S. 128, 134-137 [19 L.Ed.2d 336, 340-342, 88 S.Ct. 254].)

▮ The burden of sustaining the allegation of inadequate representation rests upon defendant. *(People v. Hill,* 70 Cal.2d 678, 688-689 [76 Cal.Rptr. 225, 452 P.2d 329]; *People v. Downer,* 57 Cal.2d 800, 813 [22

Cal.Rptr. 347, 372 P.2d 107].) To justify relief on the basis of this attack it must appear that counsel's lack of diligence or competence reduced the trial or proceeding to a "farce or a sham." (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Hill, supra,* at p. 689.)

With respect to the sentencing hearing, we apprehend that, as a bare minimum, it is the duty of defense counsel to familiarize himself with the sentencing alternatives, to ensure that the court and his client are aware of the available sentencing alternatives, and that the sentencing decision is based on complete and accurate information. (See Tent. Draft, Amer. Bar Assn., Sentencing Alternatives and Procedures, § 5.3, pp. 238-252; President's Com., Task Force Report: The Courts, pp. 19-20, Appendix A, pp. 110-111, 118-119.) If counsel's failure in these duties results in the withdrawal of a right crucial to the sentencing process or the sentencing decision, the defendant has not had the assistance to which he is entitled. (See *People* v. *Ibarra, supra; People* v. *Hill, supra.*) It is not enough, however, that the defendant alleges omissions of counsel indicating lack of preparation and general incompetence, but he must show that such acts and omissions resulted in a withdrawal of a right crucial to the sentencing process or the sentencing decision. (See *People* v. *Hill, supra; People* v. *Kirchner,* 233 Cal.App.2d 83, 86 [43 Cal.Rptr. 218].)

In the present case there is no showing that defense counsel was guilty of any acts and omissions resulting in a deprivation of a right crucial to the sentencing process or the sentencing decision. Although the charge is made that counsel was *totally* unfamiliar with the case, this charge is not borne out by the record which discloses that the counsel at the sentencing hearing had discussed the case with trial counsel. The record discloses that defendant was ineligible for probation and that, accordingly, no reference was made to the probation officer. The record discloses, further, that the court, counsel and defendant were clearly aware of the sentencing alternatives, these being a concurrent or a consecutive sentence. Although counsel indicated he was not familiar with the evidence at the trial with respect to the prior offenses admitted by defendant in addition to those charged in the indictment, counsel was aware that defendant had admitted the six prior felonies alleged in the indictment. Counsel argued forcibly that these priors did not warrant a consecutive sentence and assiduously contended that the prosecutor was urging a consecutive sentence merely because defendant had requested a trial by jury. We point out here that counsel was apprised by the court that defendant had admitted the commission of 13 previous felonies. Although counsel should have been prepared to refute this statement if it were not true, defendant does not assert that such was not the truth although in his brief he urges that the record is "confused" in this regard. Suffice it to say, we do not perceive, in view of

the trial court's statements at sentencing, that counsel could have successfully urged the court to impose a concurrent rather than a consecutive sentence had he been able to establish that defendant had not committed any prior felonies other than the six charged in the indictment and expressly admitted by defendant.

Adverting to the comments by the prosecutor to which defendant's counsel failed to object on the basis that he was unfamiliar with the veracity of these statements, we observe that while such failure indicated a lack of proper preparation for the sentencing hearing, we do not perceive that such failure deprived defendant of a substantial right so as to render the sentencing process a sham and a farce. One of the statements was that defendant had committed 13 prior felonies. We have already alluded to this statement. The other was the statement that a reasonable deduction or conclusion could be drawn from the evidence that there was a "strong possibility" that defendant was in the business of manufacturing knives in prison in view of the testimony of an inmate witness called by defendant who admitted making knives, and the belief of the prosecutor that defendant had also stated this was his practice.

Section 1204 provides that proof of a former conviction or circumstances in aggravation or mitigation of punishment must be presented by the testimony of witnesses examined in open court. This section also provides, inter alia, that no representation can be made to the court in aggravation or mitigation of the punishment except as provided in that section and section 1203 providing for the making of probation reports by the probation officer.

In the present case the prosecutor's statement that defendant had stated it was his practice to make knives was violative of section 1204 since it was a statement of matters outside the record. (See *People* v. *Neal,* 97 Cal. App.2d 668, 674-676 [218 P.2d 556].) Such statement was, therefore, subject to objection. This same infirmity does not apply, however, to the prosecutor's statement that it could be concluded that defendant was in the business of making knives. Comment on evidence in the record before the court is not proscribed by section 1204. (See *People* v. *Gillette,* 171 Cal. App.2d 497, 504 [341 P.2d 398]; *People* v. *Rudolph,* 28 Cal.App. 683, 685-686 [153 P. 721].) Here there was evidence not only that defendant was in possession of a knife but also that the knives had been made by the inmate witness who testified on behalf of defendant and stated that he was a friend of defendant. ■ It is a well-established principle that it is within the domain of legitimate argument for a prosecutor to state his deductions or conclusions drawn from the evidence at trial. (*People* v. *Rogers,* 163 Cal. 476, 482 [126 P. 143]; *People* v. *Kirkes,* 39 Cal.2d 719, 723-724

[249 P.2d 1]; *People* v. *Dillinger,* 268 Cal.App.2d 140, 144 [73 Cal. Rptr. 720]; *People* v. *Hardy,* 271 Cal.App.2d 322, 330 [76 Cal.Rptr. 557].)

We are thus left with the statement that defendant had stated it was his practice to make knives to which defense counsel did not object because he was unfamiliar with the state of the record. Under all the circumstances we do not believe that the failure to object to this statement reduced the sentencing hearing to a farce and a sham. We first observe that the prosecutor stated that he "believed" that defendant had stated it was his practice to make knives. The remark appears to have been made in good faith and not with the deliberate intent to bring in evidence outside the record. We also note that the trial court stated that none of the matters alluded to by the prosecutor "will alter what should be done at this time one way or the other." Accordingly, we conclude that the failure to object to this one instance of the prosecutor's misconduct may not be deemed to be incompetency of counsel warranting a reversal since it is not reasonably probable that absent the making of the subject statement a concurrent rather than a consecutive sentence would have been imposed by the court. (See *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

### The Sentence

Defendant contends that it was prejudicial error and a violation of due process to impose a consecutive, as opposed to a concurrent, sentence. He argues that the imposition of a consecutive sentence was based on mere speculation and was not pursuant to evidence as required by section 1204. We first observe, on considering this contention, that the trial judge was familiar with the evidence adduced at the trial and defendant's admissions with respect to prior felonies. His consideration of these matters was, of course, not violative of section 1204. (*People* v. *Gillette, supra,* 171 Cal. App.2d 497, 504; *People* v. *Rudolph, supra,* 28 Cal.App. 683, 685-686.)

We have already discussed the effect of the prosecutor's comments at the sentencing hearing. We now advert to the trial court's comments. The trial court alluded to defendant's conviction of 13 prior felonies. Such comment was proper since these felonies were matters in the record before the court. The trial judge's comment that if a man has been convicted of 13 felonies it could be assumed that he was guilty of "130 burglaries (sic)," since it is the normal experience that "You don't get caught every time," was a gratuitous remark which should have been left unsaid. Such remark approaches close to offending the proscription of section 1204, unless it can be said to be merely an appraisal of defendant's criminal record. In this connection we observe that it has been held that a statement by a trial judge that a defendant was a professional criminal is not a prejudicial

statement but the trial judge's personal appraisal of the defendant's criminal record. (*People* v. *Duke,* 276 Cal.App.2d 630, 635-636 [81 Cal.Rptr. 69].)

Here the trial judge's gratuitous statement appears to be merely an appraisal of defendant's criminal record. The judge made it clear that he was making the sentence consecutive because of the number of prior felonies admitted by defendant at the trial.[5] It is well established that the determination whether sentences are to run concurrently or consecutively is a matter within the discretion of the trial judge. (*In re Falk,* 64 Cal.2d 684, 687 [51 Cal.Rptr. 279, 414 P.2d 407].) In the instant case the imposition of a consecutive sentence in view of defendant's prior felony record is clearly not an abuse of discretion. Under all the circumstances we conclude, therefore, that the trial judge's gratuitous statement did not affect the sentencing process so as to compel us to hold that the trial judge abused his discretion in imposing a consecutive sentence.

We note, finally, that no objection was made to the trial judge's gratuitous comment. Accordingly, defendant may not raise an objection to such comment for the first time on appeal. (*People* v. *McGowan,* 269 Cal.App.2d 740, 743 [75 Cal.Rptr. 53]; *People* v. *Clay,* 227 Cal.App.2d 87, 101-102 [38 Cal.Rptr. 431, 100 A.L.R.2d 1421].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 31, 1971.

[5]The trial judge stated: "However, I would think that any man who has been convicted of 13 felonies, this being the 14th, has been guilty of so many offenses that he better be put away for a while, put out of circulation."