[Crim. No. 10868. First Dist., Div. Two. Apr. 23, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES CHARLES DANIS, Defendant and Appellant.

**COUNSEL**

Michael J. Hill, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James and Edward P. O'Brien, Assistant Attorneys General, and Derald E. Granberg, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**TAYLOR, P. J.**—This is an appeal by defendant Danis from a judgment of conviction by a jury for violation of section 487, subdivision 3, of the Penal Code (auto theft). Defendant contends that the trial court exceeded its jurisdiction by ordering, on motion of the prosecution, that defendant be examined by a court-appointed psychiatrist, that the examination and

medical testimony violated defendant's constitutional privilege against self-incrimination, and that it was reversible error to permit the prosecution to introduce the psychiatric testimony in rebuttal to the defense of diminished capacity.

Inasmuch as defendant relied solely on the defense of diminished capacity and his inability to entertain the required intent to commit theft, it is not necessary to relate an extensive summary of the facts concerning defendant's alleged theft of a Pinto automobile. It is sufficient to state that the testimony presented by the prosecution was uncontradicted and overwhelmingly established that defendant, with others, carefully planned, a day in advance, and executed the removal of a Pinto automobile from the Harper Ford Company in Eureka on November 22, 1971, and was paid therefor by his accomplice and codefendant.

The following testimony was introduced by the defense to establish that defendant was incapable of entertaining the required specific intent to permanently deprive the automobile's true owner of possession.

Elaine Hoyerdahl and her husband owned the home where defendant had been staying. She testified that defendant had drunk about a fifth of brandy and some beer the night before his arrest. She and her husband had left their home about 5 p.m. the evening of the 21st and next saw defendant the morning of the 22d. He was drinking brandy at the time and said he had been up all night. Although not drunk, he was under the influence. Defendant left around noon and was gone for an hour and a half. When he returned to the house, he was beginning to sober up and was still in the process of sobering up when the police officers arrived to arrest him.

Dr. Robert Gardner, a medical specialist in the field of psychiatry who was appointed by the court on defendant's motion, testified as follows. He had examined defendant three times and had spent about an hour with him on each occasion; an electroencephalogram disclosed no abnormalities and a series of psychological tests disclosed no psychosis. Defendant had prior psychological and mental disturbances and a long history of suicide attempts, which were related by the doctor. In the opinion of Dr. Gardner, defendant suffered from a condition called anti-social personality disorder. This is a functional explanation for his behavior. He also suffers from alcoholism; in the past, he has suffered from drug addiction; and may suffer from a more serious disorder called schizophrenia. Defendant was abandoned by his natural parents and spent his first two years in an orphanage. At age two, he was adopted and was the only child in the family. His adoptive parents were inconsistent and abusive and as a

consequence, defendant has a dramatic lack of conscience. Dr. Gardner expressed considerable doubt that defendant could form a specific intent to permanently deprive the owner of the possession of his vehicle.

After Dr. Gardner had so testified, the prosecution successfully moved for an order to have defendant examined by Dr. Bramwell, a county medical director with a speciality in psychiatry. Dr. Bramwell testified at the trial but the court specifically prohibited him from testifying to any incriminating statements made by defendant during the examination. Dr. Bramwell testified that during the interview, defendant seemed in good contact with reality, aware of what they were talking about, and correctly oriented. In Dr. Bramwell's opinion, defendant has a personality disorder and the symptomatology which would fall into the category of anti-social personality. In response to a hypothetical question concerning the facts of the automobile theft, Dr. Bramwell expressed the opinion that defendant could form the specific intent required to permanently deprive the true owner of a vehicle of its possession.

The sole issues are whether the court committed reversible error in granting the prosecution's motion to have a court-appointed psychiatrist examine defendant and in permitting the doctor to testify in rebuttal to the medical testimony introduced by defendant on the subject of defendant's diminished capacity.

We do not agree with the trial court's rationale that psychiatric testimony is analogous to handwriting exemplars, chemical tests or the defendant's trying on of clothing which have been classified by the courts as real or physical evidence (*Holt* v. *United States,* 218 U.S. 245 [54 L.Ed. 1021, 31 S.Ct. 2]; *Schmerber* v. *California,* 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826]; *People* v. *Ellis,* 65 Cal.2d 529 [55 Cal.Rptr. 385, 421 P.2d 393]). While some state courts have so classified psychiatric tests (*Parkin* v. *State* (Fla.) 238 So.2d 817, 820; *State* v. *Grayson,* 239 N.C. 453 [80 S.E.2d 387]), California has considered them as communicative or testimonial in character (*In re Spencer,* 63 Cal.2d 400, 409 [46 Cal.Rptr. 753, 406 P.2d 33]; *People* v. *Spencer,* 60 Cal.2d 64, 82-83 [31 Cal.Rptr. 782, 383 P.2d 134]; *People* v. *Ditson,* 57 Cal.2d 415 [20 Cal.Rptr. 165, 369 P.2d 714]; *People* v. *Combes,* 56 Cal.2d 135, 149-150 [14 Cal.Rptr. 4, 363 P.2d 4]). ■ Thus, the California cases hold that while the order appointing the psychiatrist does not in itself violate defendant's constitutional right against self-incrimination, he can, nevertheless, assert the privilege to remain silent, either by refusing to submit to the examination or to answer questions (*People* v. *Combes, supra,* pp. 149-150; *McGuire* v. *Superior Court,* 274 Cal.App.2d 583, 598 [79 Cal.Rptr. 155]; *People* v. *Strong,* 114 Cal.App. 522, 530 [300 P. 84]).

■ However, by presenting psychiatric testimony in support of his diminished capacity defense, defendant here has waived his privilege against self-incrimination, at least to the extent of foreclosing any objection to the testimony of a court-appointed psychiatrist relating to the diminished capacity issue (*In re Spencer, supra,* fn. 10, p. 412). Our Supreme Court held in *Spencer* that opinion testimony from a court-appointed psychiatrist based upon his examination of a defendant in a criminal case is admissible as prosecution rebuttal during the guilt phase of the trial, once the defendant has placed his mental condition in issue by proffering an insanity or diminished capacity defense.

In *In re Spencer, supra,* the court laid down three conditions to the admissibility of such evidence to safeguard the constitutional rights of the defendant: 1) before submitting to an examination by a court-appointed psychiatrist, a defendant must be represented by counsel or intelligently and knowingly have waived the right, and defendant's counsel must be informed as to the appointment of such psychiatrist; 2) defendant must place his mental condition in issue at the guilt phase of the trial; and 3) if the defendant does so, the court-appointed psychiatrist may be permitted to testify at the guilt phase of the trial, but the court must instruct the jurors that the psychiatrist's testimony as to defendant's incriminating statements should not be regarded as proof of the truth of the facts disclosed by such statements and that such evidence may be considered only for the limited purpose of showing the information upon which the psychiatrist based his information. In the instant case, all three of these conditions have been met. In fact, as to the third condition, the court took a more stringent step than instructing the jury concerning incriminating statements. It specifically precluded Dr. Bramwell from testifying to any of such statements made by defendant during the interview.

■ Defendant contends that the court acted without jurisdiction as there was no statutory authority for the court's order granting the prosecution's motion to have defendant examined by a court-appointed psychiatrist. We see no merit in this contention. Trial courts have the inherent power to develop rules of procedure aimed at facilitating the administration of criminal justice and promoting the orderly ascertainment of the truth (*Joe Z.* v. *Superior Court,* 3 Cal.3d 797, 801-802 [91 Cal.Rptr. 594, 478 P.2d 26]). There is ample authority that even in the absence of an authorizing statute, a trial court possesses the inherent power to order a defendant who has imposed a defense of insanity or of diminished capacity to submit to an examination of a psychiatrist selected by the People (*United States* v. *Bohle,* 445 F.2d 54, 66-67; *United States* v. *Weiser,* 428

F.2d 932, 936; *United States* v. *Albright,* 388 F.2d 719, 722-725; *In re Spencer, supra*).

As the court stated in *Alexander* v. *United States,* 380 F.2d 33, 39: "It would violate judicial common sense to permit a defendant to invoke the defense of insanity [or diminished capacity] and foreclose the Government from the benefit of a mental examination to meet this issue." We conclude that not only did the trial judge possess the authority to order the examination but he in no way abused his discretion in doing so in the time and manner in which it was ordered. The order was not made until defendant had actually presented the testimony of Dr. Gardner in support of his diminished capacity defense. Thus, the affirmative defense was clearly in issue and it was appropriate for the People to present psychiatric testimony in rebuttal if such evidence was available or could be developed.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 20, 1973.