Filed 12/10/21  P. v. Wuco CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C092222 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F2582) |
| v. | |
| DAVID WILLIAM WUCO, | |
| Defendant and Appellant. | |

In exchange for a stipulated sentence, defendant David William Wuco pleaded no contest to three counts of assault on a peace officer with force likely to produce great bodily injury (Pen. Code, § 245, subd. (c); (statutory section references that follow are to the Penal Code); admitted he caused great bodily injury for two of the above counts (§ 12022.7); and admitted he suffered a prior strike conviction (§ 1170.12).  After denying his motion to withdraw his plea, the trial court sentenced him to the stipulated term.  Defendant contends the trial court abused its discretion in denying his motion to withdraw his guilty plea, claiming his plea was not knowing, intelligent or voluntary as he was incompetent at the time of the plea.  We affirm the judgment.

1

## FACTS AND HISTORY OF THE PROCEEDINGS

Due to the limited nature of the claim on appeal, we need not recite the facts of defendant's crimes in any detail. It suffices to say, defendant was not allowed on the campus of Shasta College due to his alleged prior harassment of a student. When officers attempted to escort him off the property, he physically resisted. At least two officers sustained injuries including a fractured eye socket, a separated bicep, and a nasal fracture. Defendant was charged with three counts of assault on a peace officer with force likely to produce great bodily injury (§ 245, subd. (c)); three counts of battery on an officer with injury (§ 245, subd. (c)(2)); four counts of resisting officers (§ 69); and one count of trespass and refusal to leave private property (§ 602, subd. (a)). The prosecution also alleged defendant personally inflicted great bodily injury on two officers (§ 12022.7) and suffered a prior strike conviction (§§ 1170.12; 667, subd. (a)(1); 667.5, subd. (b)).

On November 8, 2019, defendant pleaded no contest to three counts of assault on a peace officer with force likely to produce great bodily injury (§ 245, subd. (c)); admitted he personally inflicted great bodily injury for two of those counts (§ 12022.7); and admitted he suffered a prior strike conviction (§ 1170.12). The court sentenced defendant to the stipulated term of 19 years and four months.

Prior to judgment, defendant sought to withdraw his guilty plea. He asserted he was mentally incompetent at the time of the plea and therefore his plea was not knowing, voluntary, or intelligent. Defendant stated shortly after he entered his plea, he made "troubling" statements to jail mental health staff and undertook suicidal action. Defendant claimed his mental incompetence predated and persisted through his plea. In support of his motion, defendant attached defense counsel's declaration, a consent for the administration of the medication Zyprexa, and clinical notes documenting mental health sick calls, refusals of services, use of restraints, and suicide assessments from April to December 2019.

2

In his declaration attached to the motion, defense counsel stated he never detected any indication defendant was incompetent and, during the hearing on the change of plea, defendant seemed coherent and competent to waive his rights and enter his plea.

The clinical notes drafted by the jail's mental health professionals reveal defendant was assessed as a new mental health patient in April 2019. This assessment noted a suspected mood disorder; but, noted defendant appeared stable. On November 8, 2019, Dr. Pamela Johansen, a clinical social worker, assessed defendant's mental health needs after defendant returned from his change of plea hearing. Defendant told Dr. Johansen he made a mistake in entering the plea agreement. He expressed concern over his "thinking" and explained he believed a fantasy relationship with a woman was real. Defendant spoke about his fantasy-reality "including codes and answering himself." Later in the conversation, defendant told Dr. Johansen he tried to commit suicide, but he was glad he failed. Dr. Johansen assessed defendant to be suffering from situational stress. Dr. Johansen met with defendant the next day and noted defendant exhibited no symptoms of a thought disorder. Defendant then twice refused to attend scheduled weekly follow up appointments.

At the hearing on the motion to withdraw the plea, Dr. Johansen testified regarding her assessment of defendant on November 8, 2019. She explained defendant returned from court upset. Defendant showed her a red mark on his neck and told her he tried to hang himself. Defendant also told her he was grateful his attempt was not successful and denied being suicidal.

Dr. Johansen opined defendant was experiencing situational stress, a logical human reaction to going back to prison. She acknowledged defendant said he felt he was going "crazy" but explained that it is "almost to be expected" for people facing serious consequences to say they are "crazy" or have mental health issues. Dr. Johansen saw no evidence defendant had a thought disorder. Ultimately, Dr. Johansen did not place defendant in a safety cell that day because defendant had no mental health history as far

3

as she was aware, defendant was distraught over his court case, defendant articulated several reasons why he would not kill himself, and the circumstances did not justify use of the "pretty brutal" safety cells. Weekly follow up visits were scheduled but the following week, defendant refused services and said he was "fine." Defendant refused mental health services again the following week.

In opposition to the motion, the prosecution introduced a transcript of a phone call, with the representation that defendant placed the call from jail to Jericho Project two days after he indicated he wanted to withdraw his plea. In that conversation, defendant stated he was not on medication and had no current mental health issues although he thought he was diagnosed with ADHD as a minor. Defendant also told the representative from Jericho Project he should be accepted into the program because he had clear goals, planned steps toward completing those goals, and if he did not get a chance to show he could be a participating member of society, it would be a waste of a good person. The prosecution also submitted contents of text messages defendant sent to third parties, including one message defendant sent to his sister, which stated he had changed his mind and wanted to take his case to trial. The other text messages referenced family members and events or entertainment; none referenced mental health issues or suicidal ideation.

On its own motion, the trial court introduced two letters defendant wrote to the court. These letters, written prior to the change of plea hearing, explained defendant's hesitancy to accept the prosecution's offer. In one letter, defendant expressed concern that his offered sentence was excessive compared to other sentences for other crimes. In the other letter, defendant expressed his fear that he would not survive prison.

In ruling on the motion, the court noted that defense counsel had no indication defendant was incompetent. The trial court observed there were multiple plea discussions and the prosecution's case was strong. The trial court also referenced the two letters from defendant, and defendant's communications with Jericho Project, which indicated a desire at a chance to reenter society. Finally, defendant told his sister he

4

changed his mind and wanted to have a trial. The trial court found there were no facts that would support withdrawing the plea and concluded defendant entered his plea voluntarily, intentionally and with full knowledge, but now regretted taking the plea. Accordingly, the trial court denied the motion to withdraw the plea.

Defendant obtained a certificate of probable cause and appealed.

## DISCUSSION

Defendant contends the trial court erred in denying his motion to withdraw his plea. He argues he met his burden to show his mental incompetence rendered his plea invalid as it was not knowingly or voluntarily entered. Defendant argues his suicide attempt, belief in a fantasy-reality, diagnosed mental disorder, and prescribed Zyprexa constituted clear and convincing evidence he was incompetent to enter a plea. We disagree.

Prior to judgment, a court may permit a defendant to withdraw his plea for good cause. (§ 1018.) To establish good cause, the defendant has the burden to show clear and convincing evidence of mistake, ignorance, or other factors overcoming his or her exercise of free judgment, including inadvertence, fraud, or duress. (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1415–1416.) A defendant who is incompetent to stand trial because he is unable "to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner," is also incapable of entering a knowledgeable plea and such a plea cannot stand. (See § 1367; *People v. Hofferber* (1977) 70 Cal.App.3d 265, 269.) "A plea may not be withdrawn simply because the defendant has changed his [or her] mind." (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

Where the defendant argues that his plea was not knowingly and intelligently made, a trial court has the discretion to deny a motion to withdraw a guilty plea and this decision is final unless the defendant can show a clear abuse of that discretion. (*People v.*

5

*Fairbank* (1997) 16 Cal.4th 1223, 1254.) A reviewing court must adopt the trial court's factual findings if supported by substantial evidence. (*Ibid.*) Guilty pleas resulting from a bargain, moreover, should not be set aside lightly, as finality of the proceedings are encouraged. (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.)

We conclude that the trial court did not abuse its discretion in denying defendant's motion to withdraw his plea, because defendant did not meet his burden to show that he was mentally incompetent when he entered the plea and the evidence showed defendant regretted entering the plea.

A person with mental health issues may still be competent to stand trial, and therefore capable of entering a plea, if he is able to understand the nature of the proceedings taken against him and is able to assist counsel in presenting a defense. (See *People v. Hofferber, supra*, 70 Cal.App.3d at p. 269.) Here, defense counsel detected no indication defendant was incompetent to enter his plea. The trial court had several plea discussions and communications with defendant, with no concerns regarding defendant's competency. Defendant introduced no evidence to undermine their respective assessments. Defendant produced no evidence of: any actual diagnosis of a mental disorder; any connection between his alleged disorder and his competency; the administration of Zyprexa at the time of the plea; or any impact Zyprexa had on his ability to understand the nature of the charges or his ability to assist in his defense. To the extent defendant presented evidence of mental health issues, such as his suicide attempt and belief in a fantasy reality, it was not accompanied with other factors, such as bizarre behavior, testimony of a mental health professional regarding competence, or any other indications of an inability to understand the proceedings or to assist counsel. (See *People v. Rogers* (2006) 39 Cal.4th 826, 848.) Contrary to defendant's claim, he did not establish good cause to withdraw his plea.

Moreover, there is substantial evidence supporting the trial court's finding defendant sought to withdraw his plea because he regretted entering the plea. As the trial

6

court noted, the offer included a long sentence, but the maximum sentencing exposure was much greater, and the prosecution's case was strong. Defendant sought possible alternatives to his difficult choice. He wrote the trial court, called Jericho Project, and reached out to family members. Indeed, on the day scheduled for judgment and sentencing, defendant texted his sister that he changed his mind and wanted to take his case to trial. These communications demonstrate defendant's desire to withdraw the plea stemmed from his unhappiness with the prison sentence, not from any inability to understand the terms of his plea, the charges he faced or his inability to assist in his defense.

That defendant later regretted the decision to enter a plea does not mean the trial court abused its discretion in denying his motion to withdraw the plea. (*People v. Knight* (1987) 194 Cal.App.3d 337, 344 ["Postplea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty"].)

The trial court did not abuse its discretion.

DISPOSITION

The judgment is affirmed.

HULL, J.

We concur:

BLEASE, Acting P. J.

KRAUSE, J.

7